CHEW, Appellant, v. KELLAR et al.

Division One, December 24, 1902.

1. **Conveyances: CONSTRUCTION: RECONCILING CLAUSES.** It is a cardiñal rule of construction that effect must be given to all parts of a deed, if possible, and that courts will not so construe an instrument as to create a repugnance between its several parts if any construction can be adopted by which all its provisions can stand and be harmonized.

2. ——: ——: ——: DEED TO BODILY HEIRS: LIFE ESTATE. A deed conveyed land to Martha, wife of James, "her bodily heirs and assigns," and in the habendum clause stated that "it is the intent by this deed to convey to the sole use and benefit of the party of the second part, the above granted premises, to be held and enjoyed by her, separate and apart from her said husband and wholly free from his control, interference, debts and liabilities, curtesy and all other interests whatsoever." *Held,* that this habendum clause did not destroy that portion of the granting clause which conveys the fee to Martha's "bodily heirs." It is true that the words "to Martha and her bodily heirs," standing alone, created only a life estate in her, and that it would be useless to bar her husband's curtesy in her life estate. But the habendum clause refers to something more than his curtesy; for, even though she was given only a life estate, he had, without that clause, the right to the possession, rents and profits of the property while the life estate continued, and this language of the habendum clause is reconcilable with an intention to cut off that possessory right, and is not therefore irreconcilable with the granting clause, and hence there is no such repugnancy between the two claims as eliminates the words "bodily heirs" in the granting clause.

3. ——: TO ONE AND HER BODILY HEIRS AND ASSIGNS. The use of the word "assigns" either in the habendum or granting clause of a deed to "Martha, her heirs and assigns," does not have the effect of enlarging what would otherwise be a life estate into a fee simple.

4. ————: ————: EFFECT OF QUITCLAIM DEED. A quitclaim deed is not a mere release. It has the effect of transferring whatever title the grantor had to the persons named as grantees, and of giving to each the interest specified. It can be used to create an estate tail, a life estate or a fee, or all of such estates. It differs from a warranty only as affecting the liability of the grantor.

Appeal from Chariton Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*Crow & Eastin* for appellant.

(1) The deed from Ellington to Martha O. Gunn, conveyed to the grantee the fee simple title to the real estate free and clear from the control, interference, curtesy and other interests of her husband. It was designed by the grantor to create in the grantee a separate, equitable estate in fee simple, free from her husband's control and curtesy, and nothing more. This has been done by the express language of the deed. The intention is plain, and the intention must control. Fanning v. Doan, 128 Mo. 323; Long v. Timms, 107 Mo. 512; Davis v. Hess, 103 Mo. 31; Gibson v. Bogy, 28 Mo. 478; Rines v. Mansfield, 96 Mo. 394. (2) The deed was drawn by a layman, and when he inserted the clause, "It is the intent by this deed to convey to the sole use and benefit of the party of the second part the above granted premises to be held and enjoyed by her separate and apart from her said husband wholly free and clear from his control, interference, debts, and liabilities, curtesy and all other interests whatsoever," he intended by it to interpret the language previously used, and to declare in common terms the full purpose of the grantor. When such a clause is inserted, it is of controlling importance in determining intention. Murphy v. Gabbert, 166 Mo. 596; 2 Devlin on Deeds, sec. 837; Coleman v. Beach, 97 N. Y. 545; Bent v. Rogers, 137 Mass. 192. (3) The word "bodily" in the Ellington deed is not used in its technical sense.

The clause inserted after the description ascribes to it a different meaning. ''The grantor in a deed has the right by a clause inserted in the same, to set aside the general sense of the words he uses, and for the purposes of the deed in question, to assign to them another and different meaning.'' Morrison v. Wilson, 30 Cal. 344; Railroad v. Beal, 47 Cal. 157; 2 Devlin on Deeds, sec. 837. Plain intention will prevail over technical terms. Daniel v. Whortenbey, 17 Wall. 643; DeVaughn v. Hutchinson, 165 U. S. 570. (4) The provision of the deed which declares the intention of the parties expressly bars curtesy. If effect be given to the word ''bodily,'' a life estate is created in Martha, and curtesy is not an incident of a life estate. Spencer v. O'Neil, 100 Mo. 49; Phillips v. LaForge, 89 Mo. 73. Curtesy does attach, however, to a separate equitable estate, unless expressly barred by the instrument creating it. McTigue v, McTigue, 116 Mo. 138; Kennedy v. Koopman, 166 Mo. 87. Some effect, if possible, must be given to the language barring curtesy. This can not be done if the word ''bodily'' prevails. (5) Estates tail ''are, in their nature, inalienable, and upon failure of issue in lineal descent from the first taker, revert to the grantor. They have ever been obnoxious to the instincts of our people, and have for so long a time been abolished by positive law that it can hardly ever now be presumed that the grantor in a deed intends to create such an estate. That he has done so in any case ought not to be concluded unless the terms of the deed plainly require such a construction.'' Fanning v. Doan, 128 Mo. 328. (6) The parties to both the Ellington and Perkinson deeds understood that the fee was conveyed, and when Martha, the grantee, gave the deed of trust to the Phoenix Mutual Life Insurance Company and the commission deed of trust which was foreclosed and under which title is here asserted (both of which were ''grant, bargain and sale'' deeds), she thereby asserted, among other things, that she was, ''at the time of the execution of such conveyances, seized of an indefeasible estate, in fee simple in the real estate

thereby granted,'' and the law is that, in construing an instrument, the acts and conduct of the parties to it are entitled to great weight.   Hunter v. Patterson, 142 Mo. 310; Patterson v. Camden, 25 Mo. 13; Belch v. Miller, 32 Mo. App. 387; Moser v. Lower, 48 Mo. App. 85; Ridge v. Transfer Co., 56 Mo. App. 133; Dakin v. Savage, 172 Mass. 23.   (7)   Independent of the special clause inserted for the express purpose of declaring intention, appellant is entitled to recover.   The granting clause reads ''grant, bargain and sell, convey and confirm, unto the said party of the second part, her bodily heirs and assigns.''   Assigns means ''assignees— persons to whom a grantee may potentially convey.'' Anderson's Law Dictionary.   These words conferred a power upon the grantee.   It has been exercised, and appellant, through the exercise of that power, holds the fee.   Peck v. Ingraham & Read, 28 Miss. 246; Rines v. Mansfield, 96 Mo. 394; Brown v. Agricultural Assn., 34 Minn. 545; Nopson v. Horton, 20 Minn. 239; Bank v. Ellicott, 6 Gill & John. 663; Baily v. DeCrespingy, L. R. 4, Q. B. 186; Coke upon Littleton, 9, 6; 3 Washburn on Real Prop. (5 Ed.), p. 6.   (8)   The deed from Perkinson to Martha is a quitclaim, and an estate tail can not be created by a quitclaim deed.   While the quitclaim, under our law, contains operative words of conveyance, it can do no more than relinquish whatever interest the grantor has; and this interest it passes forever.   The possibility of a reversion, which is an incident of an estate tail, is wholly foreign to every idea even remotely suggested by a quitclaim.   At common law it was used:   (a)   To enlarge a particular estate in possession; as where the reversioner releases the inheritance to the tenant for life.   (b)   To pass the interest of one co-parcener or joint tenant to another. (c)   To transfer to a disseizor the desseizee's right of entry, and thus make the   disseizor's   title   absolute. Tiedeman on Real Prop., 722.   Its modern powers have been enlarged somewhat, but no authority can be found which gives it the power to project an estate into the future, and then, upon certain contingencies, draw

it back again to the grantor.   The most diligent search has failed to discover to us a case where this question has been directly decided, but in the case of Gibson v. Chouteau's Heirs, 39 Mo. 567, it is said, in discussing another phase of the quitclaim, that, "It must not be a quitclaim deed merely transferring the grantor's interest, whatever it may be, but a deed which expressly undertakes to convey the land itself."   This language states the difference between a quitclaim and a warranty.   The one relinquishes or transfers whatever interest the grantor has in the land, the other conveys the land itself.   (9)   By the deed from Perkinson and wife, Martha took either the fee or as tenant in common with her children in being at the time the deed was executed.   Fanning v. Doan, 128 Mo. 323; Hamilton v. Pitcher, 53 Mo. 336; Allen v. Claybrook, 58 Mo. 124; Rines v. Mansfield, 96 Mo. 394.

*Johnson & Johnson* and *Crawley & Son* for respondents.

Each of the two deeds in controversy vested in Martha a life estate only, with remainder to the heirs of her body; and the judgment of the circuit court should be affirmed.   Bean v. Kenmuir, 86 Mo. 671; Godman v. Simmons, 113 Mo. 122; Reed v. Lane, 122 Mo. 311; Hunter v. Patterson, 142 Mo. 310; Davidson v. Manson, 146 Mo. 608.

MARSHALL, J.—This is an action in ejectment for the west half of the southeast quarter, and the south half of the south half of the northeast quarter of section eighteen, township fifty-three, range sixteen, in Chariton county.   While the case was pending on appeal in this court, the plaintiff died, and the case has been properly revived in the names of his sole legatees, Elizabeth Chew and Delia A. Brown.

The controversy hinges upon the construction of two deeds.   The first is a warranty deed from Samuel D. Ellington and wife to their daughter, Martha O. Gunn, wife of James Gunn, dated September 16, 1879,

conveying the west half of the southwest quarter of section eighteen. The deed grants, bargains, sells, conveys and confirms, "unto the said party of the second part, her bodily heirs and assigns," the land specified above. Then, following the description of the property, is this provision in the deed:

"It is the intent by this deed to convey to the sole use and benefit of the party of the second part, the above granted premises, to be held and enjoyed by her, separate and apart from her said husband and wholly free and clear from his control, interference, debt and liabilities, curtesy and all other interests whatsoever."

The deed then contains the habendum and tenendum clauses and covenants as to title.

The second deed is a quitclaim deed from T. P. Perkinson and wife, parties of the first part, "and Martha O. Gunn and the heirs of her body of the county of Chariton, in the State of Missouri, party of the second part," and conveys the south half of the south half of the northeast quarter of section eighteen. The habendum clause is: "To have and to hold the same with all the rights, immunities, privileges and appurtenances thereto belonging, unto the said *parties* of the second part," etc.

The plaintiff traces title in this way: On April 24, 1895, Martha O. Gunn and her husband executed a deed of trust on the property, which purported to cover the fee, subject to a prior deed of trust. Default was made thereon, the trust foreclosed and the plaintiff Chew became the purchaser at the trustee's sale.

The petition is in the usual form, and the answer is an admission of possession, a claim of ownership, and otherwise a general denial.

Upon the trial the plaintiff introduced the two deeds to Mrs. Gunn, the trustee's deed to the plaintiff, and proved the value of the rents and profits. On cross-examination of plaintiff's witnesses the defendants showed that Mrs. Gunn died in March, 1896, before the institution of this suit, leaving certain bodily heirs, and

that the defendants claim title through Mrs. Gunn and her bodily heirs, but exactly how, is not disclosed. At the close of the plaintiff's case, the court sustained a demurrer to the evidence, the plaintiff took a nonsuit, with leave, and after proper steps appealed.

## I.

The legal question in this case is what estate Mrs. Gunn had.

The warranty deed from Ellington and wife conveyed the first described tract, to Mrs. Gunn "her bodily heirs and assigns," and then the deed recited that it was the intent of the deed to convey to the sole use and benefit of Mrs. Gunn "to be held and enjoyed by her, separate and apart from her said husband and wholly free and clear from his control, interference, debt and liabilities, curtesy and all other interests whatsoever." In describing the parties to the deed Mrs. Gunn is named as *party* of the second part. The granting clause is to Mrs. Gunn, her bodily heirs and assigns, and the habendum and warranty clauses are in the same words. The quitclaim deed describes Mrs. Gunn and the heirs of her body, as the *party* of the second part, and the habendum clause is "unto the said *parties* of the second part and the heirs of her body and assigns."

By reason of these provisions and this verbiage, the plaintiff's claim is, that it is plain that the deeds were not written by an expert conveyancer, nor by one who understood the technical meaning of the terms employed, and that for this additional and cogent reason, the intention of the parties should prevail over mere words or phrases; that as to the warranty deed there is an irreconcilable conflict between the granting clause to Mrs. Gunn, her bodily heirs and assigns, and the clause which immediately follows, expressive of intention to create a separate estate in Mrs. Gunn, free from the control or right of her husband and intending to cut off curtesy; that if Mrs. Gunn had only a life

estate, as the defendants claim, this intention clause would be useless and meaningless, because curtesy begins with the death of the wife, and, therefore, could never attach to a life estate of the wife; that the deed grants the land to Mrs. Gunn, her bodily heirs and *assigns,* which must be construed to give Mrs. Gunn a right to alien it, and that only so much as she does not assign or dispose of was intended to go to her bodily heirs; that it is clear the draughtsman of the deed did not know of the legal meaning or effect of a conveyance to Mrs. Gunn and her bodily heirs, and very certain that he never heard of an estate tail, or the fact that by our statute such an estate is converted into an estate for life in the first taker with a fee in remainder.   And as to the quitclaim deed the plaintiff claims that an estate tail must be built up and can not be created by a mere abandonment, and also calls attention to the fact that in the first clause of the deed Mrs. Gunn and the heirs of her body are referred to as "party" (in the singular number) of the second part, while the habendum clause is to the "said *parties* of the second part, and the heirs of her body and assigns" and from this, the deduction is drawn that it must be held to be an absolute conveyance to Mrs. Gunn, with power in her to assign or convey it, and that only so much as she does not dispose of would pass to her heirs.

These ingenious contentions are supported by strong arguments and by references to prior adjudications of this court which are claimed to be pertinent to and decisive of the case at bar.   The cases of Rines v. Mansfield, 96 Mo. 394; Fanning v. Doan, 128 Mo. 323; and Murphy v. Gabbert, 166 Mo. 596, are fair types of the cases cited by plaintiffs.

Murphy v. Gabbert is relied on to support the contention that the intention clause of the warranty deed has the effect to eliminate the words "her bodily heirs" in the granting clause of the deed. The question in Murphy v. Gabbert was whether the instrument was, in legal effect, a deed or a will, and it was properly held that as it expressly declared that it was not to take

effect until the death of the grantor, it was a will and not a deed, because a deed must take effect *in praesenti,* while a will becomes operative only at the death of the testator.   There can be no question as to the correctness of that decision, but its application to or support of the contention in this case, that the intention clause destroys that portion of the granting clause of the warranty deed that conveys the land to the "bodily heirs" of Mrs. Gunn, is not by any means clear, nor to be conceded.

It is true the intention clause would be unnecessary to bar curtesy if Mrs. Gunn had only a life estate.   But Mrs. Gunn's husband had another interest in the land outside of curtesy, even if she had only a life estate. He was entitled to the possession, rents, issues and profits of the property during the continuance of the wife's life.   [Flesh v. Lindsay, 115 Mo. l. c. 17; Hall v. French, 165 Mo. 430.]   The intention clause was necessary in the warranty   deed to cut out   this   marital right of Mrs. Gunn's husband.   This right arose instantly with the making of the deed to Mrs. Gunn and continued during her life and coverture.   It was an interest which was not taken away from her husband by our statute.   [Flesh v. Lindsay, 115 Mo. l. c. 17.]

The intention clause, therefore, performed quite an important function, and is not necessarily or at all repugnant to the granting clause, and hence did not destroy that part of the granting clause with respect to "her bodily heirs."   It is a cardinal rule of construction that effect must be given to all parts of an instrument, if possible, and that courts will not so construe an instrument as to create a repugnance between its several parts if any construction can be adopted by which all of the provisions can stand and be harmonized.   This rule applies to this case, and differentiates this case from the case of Murphy v. Gabbert, supra, where there was a necessary repugnance between the granting clause and the intention clause, one of which had to give away and the other prevail, and the intention clause was given effect.

In Rines v. Mansfield, 96. Mo. 394, the granting clause was to "Elizabeth S. Mansfield, his *children* and assigns forever." The habendum clause was to "Elizabeth S. Mansfield, his *heirs* and assigns forever." It was held that the word "children" in the granting clause was used in the sense of "heirs," the habendum clause being proper matter of reference to ascertain the grantor's intention. It was also stated that the principal question in the case was whether Mrs. Mansfield took a fee or was only a tenant in common with her children, and it was held, upon the authority of Green v. Sutton, 50 Mo. l. c. 192, that if there are inconsistent provisions in a deed, some indicating absolute power of disposal and others creating only a life estate, the deed must be construed as creating a fee.

Without stopping to analyze this case or to inquire whether it is in line with later decisions of this court, it is enough now to say that it is not a controlling precedent in this case, for the reason, as above pointed out, that there is no necessary repugnance between any of the provisions of this deed.

In Fanning v. Doan, 128 Mo. 323, the grant was to "Sarah A. Doan and her heirs by John Doan, their heirs and assigns forever." The plaintiff contended that the deed vested a fee simple estate in Mrs. Doan and her heirs by John Doan, while the defendant contended that the deed created a fee tail, which our statute converted into a life estate in Mrs. Doan, with a remainder in fee in her children begotten by John Doan, the effect of which was that in case of a failure of that line of descent the property would revert to the grantor and his heirs. The court called attention to the fact that estates tail, with their inalienable and reverter incidents aforesaid, are obnoxious to our people, and held that the words "her heirs by John Doan" should be construed as words of description and not of limitation, and that Mrs. Doan and her children (she had two by a former marriage and four by her marriage with John Doan) took as purchasers an estate in fee simple as tenants in common. No such condition is present

in this case, and hence that case does not apply to the case at bar.

This is sufficient to dispose of the contention that there is a repugnance in the warranty deed between the granting clause and the intention clause. There is no such repugnance claimed to exist in the quitclaim deed.

It is contended, however, that the use of the word "assigns" in the granting and habendum clauses of the warranty deed, and in the habendum clause of the quitclaim deed, gives Mrs. Doan the right to convey the whole estate and that her heirs are entitled to only so much as she did not alien, and in this case as she aliened the whole property, her heirs got nothing. This contention is completely negatived by the case of Davidson v. Manson, 146 Mo. 608, where it was held that the use of the word "assigns" did not have the effect of enlarging what would otherwise be a life estate into a fee simple.

It is further argued that a quitclaim deed is only an abandonment of a claim, and that an estate tail can not be created by such a deed, the argument being that an estate tail must be built up and can not be accomplished by a mere abandonment. Counsel frankly confess an inability to cite any adjudication in support of this contention, nor is it believed that any can be found. The infirmity of the contention lies at the root of the first premise. A quitclaim deed is not a mere release. It has the effect of completely transferring whatever title the grantor had to the persons named as grantees, and of giving to each the interest specified. A trust estate, as well as an estate tail or in fact any kind of a legal tenure, may be built up by such a conveyance. Such a conveyance affects only the liability of the grantor if the grantees do not acquire a good title.

The sum of the matter is that the warranty deed conferred a life estate upon Mrs. Gunn, cut off the husband's right to the possession during his wife's life and during the coverture, and vested a remainder in

Vol 171, mo—15.

fee in the heirs of Mrs. Gunn; and the quitclaim deed had the same effect except as to the husband's right of possession, which, however, is immaterial now as that right terminated with the death of the wife. This being true the mortgage made, by Mrs. Gunn and her husband covered only the wife's life estate and the husband's right to possession, and this was all the plaintiff acquired by the foreclosure of the mortgage, and as all of these interests terminated with the death of the wife, the plaintiff showed no title or right of possession, and therefore the judgment of the circuit court is right, and hence it is affirmed. All concur.