ANNIE GOODALE et al., Appellants, v. LEAH J. EVANS et al.

Division One, December 31, 1914.

1. WITNESS: Competency: Resulting Trust: One Party Dead. For the purpose of establishing a resulting trust in herself, a widow is not competent to testify that she furnished the purchase money for land conveyed to her deceased husband by a deceased grantor.

2. CONVEYANCE: Effective Upon Grantor's Death: Void. A deed to take effect upon the grantor's death is testamentary in character and void; and a deed which in the *habendum* clause says, "To have and to hold the premises . . . from and after the death of him the said" grantor, and that the grantee is to "have and hold the premises from and after his death" is such a deed.

Appeal from Macon Circuit Court.—*Hon. Nat M Shelton,* Judge.

REVERSED AND REMANDED.

*Waldo Edwards* and *Ed. S. Jones* for appellants.

(1) The purported deed through which defendants claim title being limited by its terms to take effect on the death of the grantor, is testamentary in character and, not being executed according to the requirements of law for the execution of a will, it is invalid as such. Miller v. Holt, 68 Mo. 584; Murphy v. Gabbert, 166 Mo. 576; Chew v. Kellar, 171 Mo. 215; Griffin v. McIntosh, 176 Mo. 398; Aldridge v. Aldridge, 202 Mo. 572; Givens v. Ott, 222 Mo. 411; Terry v. Glover, 235 Mo. 544; Jordan v. Jordan, 65 Ala. 301; Pinkham v. Pinkham, 55 Neb. 729; Carlton v. Cameron, 54 Tex. 72; Leaver v. Gauss, 62 Iowa, 314; Turner v. Scott, 51 Pa. St. 126; Cunningham v. Davis, 62 Miss. 366; Donald v. Nesbitt, 89 Ga. 290. The controlling canon for the construction of deeds is to ascertain the meaning of the maker from the words he uses in the light of the circumstances which surrounded, attended and waited upon his use of them. Aldridge v. Aldridge, 202 Mo. 572; Long v. Timms, 107 Mo. 512; Speed v. Railroad, 163 Mo. 111. The court should place itself in the place of the maker and read the deed in the light of all the circumstances under which it was made. Speed v. Railroad, 163 Mo. 111; Murphy v. Carlin, 113 Mo. 117. (2) The ten-year Statute of Limitations does not run against a married woman. Reed v. Painter, 145 Mo. 341; Real Estate Co. v. Lindell, 142 Mo. 62; Rutter v. Carothers, 122 S. W. 1056; Rosenberger v. Mallerson, 92 Mo. App. 27; Linck v. Vorhauer, 104 Mo. App. 373; Linville v. Greer, 165 Mo. 380. (3) Defendants' evidence does not establish a resulting trust in premises in controversy in favor of the widow of Hopkins Evans. Reed v. Speery, 193 Mo. 167; Brinkman v. Sunken, 174 Mo. 709; Viers v. Viers, 175 Mo. 444; Crawford v. Jones, 163 Mo. 577. Defendants' attempt to establish trust is barred by Statute of Limitations. Reed v. Painter, 145 Mo. 341; Cantwell

v. Crawley, 188 Mo. 44; Bradshaw v. Yates, 67 Mo. 221; Kelly v. Hunt, 61 Mo. 463. A writing to be good as a deed should pass a present interest in the property sought to be conveyed. Where it becomes operative, or takes effect upon the death of the maker, it is testamentary in character and void as a deed. Miller v. Holt, 68 Mo. 584; Murphy v. Gabbert, 166 Mo. 576; Aldridge v. Aldridge, 202 Mo. 572; Givens v. Ott, 222 Mo. 411; Terry v. Glover, 235 Mo. 544.

*R. S. Matthews, Otho F. Matthews* and *C. E. Hale* for respondents.

(1) The real estate in question was bought and paid for by defendant Leah J. Evans, with her own separate estate and money. Under the statutes the husband could not appropriate the property or money of his wife, without her consent in writing. Sec. 3296, R. S. 1879. In equity the property in question is the property of Leah J. Evans. (2) The real estate in question, by the deed of Hopkins Evans, made in 1890, divides the property into two parts. A homestead was established on that part of the lot that was to go to the children of Lizzie and David W. Jones, which homestead consisted of eight rooms and was of equal or greater value than fifteen hundred dollars. The other part of the tract of land was turned over to Leah Evans Brush who has occupied it for more than fifteen years before the beginning of the suit in this case and she has made improvements upon it to the value of $900. These plaintiffs and appellants should be estopped from making any claims to either part of said lot. (3) "A marked distinction between a testamentary deed and an ordinary conveyance is that the maker may at any time prior to his death revoke the former, but he cannot revoke the latter." (4) The law favors vested estates, and estates created by written instruments will be held to vest at the earliest pos-

sible period unless a contrary intention is clearly manifest in the grant. ''And where the deed created a present vested life estate, but postpones the right of enjoyment to grantor's death with no power in him of revocation, it will not be held to be testamentary.'' (5.) A deed creating a freehold estate *in futuro,* that is, a contingent estate, *per autre vie,* without creating at the same time and by the same deed or instrument a particular estate to support it, may be valid. The common law applicable to ancient feudal tenures, and the restrictive effects of such laws upon alienation of real property are no longer applicable in this State. O'Day v. Meadows, 194 Mo. 588; Buxton v. Koeger, 219 Mo. 224; R. S. 1899, sec. 900; Dozier v. Tolson, 180 Mo. 552. The statutes above referred to make an estate of freehold to commence *in futuro* by deed as well as will. Tindell v. Tindell, 167 Mo. 218. The rule of construction is the intent of the papers evidenced by the instrument itself to govern the construction. Davis v. Hess, 103 Mo. 31; McCullough v. Holmes, 111 Mo. 445; Utter v. Sidman, 170 Mo. 293.

WOODSON, P. J.—This action was brought in two counts, in the circuit court of Macon county, by the plaintiffs against the defendants, to determine title to a certain house and lot in Bevier, of that county.

The first count was based upon old section 650, Revised Statutes 1899, as amended in 1909, Laws 1909, page 343, now section 2535, Revised Statutes 1909; and the second count was for the partition of the property. Both counts were in conventional form and need no further consideration.

The answer was:

First. A general denial.

Second. A plea of title in the defendants by deed.

Third. That the action was barred by the ten, twenty-four and thirty-year Statute of Limitations.

Fourth. That the premises in question were pur-
chased and paid for by the defendant, Leah J. Evans
out of her separate estate, and that she was by the
right of said purchase the owner of a resulting trust
in and to said property, and prayed for a decree es-
tablishing and awarding her that right.

The reply was a general denial, and a plea of the
Statutes of Limitations against defendants' claiming
a resulting trust.

The common source of title was Hopkins Evans,
who died intestate in Macon county, on December 12,
1892, leaving his widow, Leah J. Evans, and one daugh-
ter, Annie Goodale; a grandson, Albert R. Davis; and
two granddaughters, Mary L. Jones and Anna C.
Jones, the sole surviving blood kin to said Hopkins
Evans.

Prior to his death, said Hopkins Evans executed a
deed purporting to convey the premises in controversy
to said Leah J. Evans, which was in words and figures
as follows:

"Know all men by these presents that for and in
consideration of one hundred dollars, and other good
and valuable considerations thereto moving, the under-
signed, Hopkins Evans of the county of Macon and
State of Missouri, party of the first part, has this day
granted, bargained and sold and by these presents do
hereby grant, bargain and sell unto Leah J. Evans, of
said county and State, party of the second part, wife
of the said party, the following described real estate,
lying and situate in the county of Macon and State of
Missouri, to-wit:

"All of out lot number twenty-eight in the
town or village of Bevier in the county and State
aforesaid, as the same is laid out, platted and recorded
in the proper office in said county, reserving all coal
and other minerals thereunder with the right to enter
and remove the same at pleasure.

"To have and to hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging from and after the death of him the said Hopkins Evans, party of the first part, for and during the natural life of her, the said Leah J. Evans, party of the second part, remainder in fee as follows, to-wit: sixty feet by eighty feet in the southwest corner of said lot to Leah J. Evans, daughter of John A. Evans and granddaughter of said Leah Evans, and more particularly described as follows: beginning at the southwest corner of said lot twenty-eight, and running thence sixty feet east, thence north eighty feet, thence west sixty feet, thence south eighty feet to the place of beginning: And all the rest and remainder of said lot and premises to the children of Lizzie and David W. Jones, grandchildren of her and said Leah J. Evans, said party of the second part, in equal parts, share and share alike.

"If the said party of the first part shall survive the said Leah J. Evans, party of the second part, then the children and parties above mentioned and described as remaindermen and holders of said premises, after the death of said second party, shall take, have and hold said described lot and premises, and their respective parts, shares and interests therein as above set forth, in fee, from and after the death of him the said Hopkins Evans, party of the first part.

"It is the intention of the grantor by this deed to convey said property to said Leah J. Evans for life, to take effect on the death of the grantor and after her death and after the death of him (if he should survive her), the property to go to and vest in her grandchildren named in the deed, the said Leah Evans to have and to hold said parcel of sixty by eighty feet in the southwest corner of said lot, fronting on Hunt street, and the children of Lizzie and David W. Jones to have and to hold all the rest and remainder of said lot.

"In witness whereof the said party of the first part has hereto set his hand and seal on this 11th day of August, A. D. 1890.

"HOPKINS EVANS.  (Seal)"

This deed was duly acknowledged and recorded.

This deed was introduced in evidence over the objections of the plaintiffs.

The property in controversy was the homestead of the deceased Hopkins Evans, and was worth the sum of $1500 or more at the time of the execution of the foregoing deed.

There was about two and three-quarters of an acre in the original tract, purchased by Hopkins Evans and his wife, from William Harvard on April 30, 1885, for which she paid out of her separate means $300, and the balance, some $500, was paid, as testified to, by Leah J. Evans, in the following manner:

"Q.  Where did the other money come from?  A. Well, I paid part of it as we saved it and made it; as we went along we paid it.

"Q.  The balance of the money?  A.  But I have paid altogether $800 on the place."

She also testified, as follows, regarding the execution of said deed, viz.:

"By the Court:  Q.  Why was it made to your husband instead of to you?  A.  William Harvard is not living, or I could tell you.

"Q.  Do you know why?  A. I know, yes, sir.  I was sick at the time and Mr. Harvard was there wanting payment, and Mr. Evans wanted to give him a mortgage, and I said, 'Well, Mr. Evans, I am not able to go with you, but if you will have a deed drawn up in my name I will give the money and I will help to pay for it along until it is all paid.'  'Oh, yes,' he said, 'of course I wouldn't make it out any other way.  Of course I will have it made in your name.'  When he brought the deed to me and I looked at it, I says, 'Mr.

Evans, you haven't done as you agreed to. You agreed to have it drawn in my name because I furnished the money,' 'Well, it is all the same,' he says, 'don't make a bit of difference; it will be all the same.' And he put me off, but I felt awful at the time and cried over it because it was my poor mother's money.

"Q. What did he say, if anything, at that time about deeding it to you? A. Well, he told me he was going to make it all right with me, and 'first time I go to Macon,' he said, 'I will see Dysart and I will have Dysart make a deed out to you. You shall have it; I am not going to deceive you. You shall have it in your own name.' But we did differ a little about how we would make it out. I wanted it made, because I had money in it, to my daughter. I only have one daughter, and this granddaughter, because we raised her and she always worked for us, and my daughter had always worked for us until she was married, and I told him I thought she was entitled to what I had. He says, 'I must let them other children have it, the children that has been born in the house with me; I cannot give them up; I must let them have some of it.'

"Q. That is your daughter's children here? A. Yes, sir.

"Q. These defendants? A. Yes, sir. I says, 'Supposing you deed the whole place between my daughter and granddaughter and my daughter will do all right with her children,' He says, 'She might use up the money and the little girls not have it,' He says, 'I can't come any nearer than deed it to them children.' I says, 'If you won't do any better, I will have to give in, but they are my grandchildren, but are not as dear as my own child, but if you are determined the children must have something I will have to give in.' And that was the way it was.

"Q. You may tell the court where you lived from the time the deed was made until Mr. Evans died. A. In our own house.

"Q. On this place? A. Yes, sir.

"Q. Who built that house? A. Mr. Newton.

"By Mr. Jones: Before you get into that, first we want to object to any testimony with reference to what was said or done immediately, as she testifies after this deed was made by William Harvard to Hopkins Evans, for the reason, as I so stated awhile ago, it is an act to establish a resulting trust in this party, and for the further reason that the party to this deed which they have attempted to introduce in evidence is dead, the party to the alleged contract is dead, and the mouths of the other parties to the contract are closed under the rules of evidence. We move that testimony be stricken from the record.

"By the Court: This witness is only competent for one purpose. This isn't a transaction—it don't involve the original transaction between her and her husband; it involves the transaction between her husband and Harvard, and the courts have recently decided in two cases that in a case of that character, where the wife is seeking to charge a resulting trust, she is a competent witness for the purpose of showing she paid the money and the husband took the title in himself. She is a competent witness for that purpose and that only, because it isn't a transaction between her and her husband; it isn't a transaction between her and a dead person; it is a transaction between her husband and another party.

"We lived on the place ever since we purchased it and it is worth $1500; that is, the house and the lot on which it stood."

By reading the deed of Hopkins Evans made in 1890, it will be seen that it divided the original lot into two parts; one sixty by eighty feet was conveyed to Leah Evans, now the defendant, Leah Brush; and the other tract was conveyed to children of Lizzie and David W. Jones, after the death of said Leah J. Evans.

A homestead was established on that part of the lot conveyed to the Jones children, which consisted of an eight-room house and was worth some $1500.

The tract conveyed to Leah Evans Brush had been occupied by her for more than fifteen years prior to the institution of this suit; and she had made valuable and lasting improvements on it, amounting to $900 to $1000.

Both William Harvard and Hopkins Evans, grantor and grantee in the deed of April 30, 1885, were dead at the time Leah J. Evans testified.

I. The first legal proposition presented for determination is, was Mrs. Leah J. Evans, the widow of Hopkins Evans, a competent witness to testify regarding the execution of the deed of 1885, from William Harvard to her husband, Hopkins Evans; and the deed of August 11, 1890, from Hopkins Evans to her, his wife, Leah J. Evans, heretofore set out in the statement of the case?

**Witness: Competency.**

The trial court in ruling upon the question of the admissibility of that evidence, said that her testimony was only admissible to show that Mrs. Leah J. Evans had out of her own separate means, paid the purchase price of said real estate to William Harvard, and thereby, by inference, and subsequently in express terms, stated that all of her testimony was ruled out except for the purpose of showing that she, the wife of Hopkins Evans, had paid the purchase money of said land to said Harvard.

This evidence of course was admitted for the purpose of throwing light upon the meaning of the deed of August 11, 1890, from Hopkins Evans to his wife, Leah J. Evans.

The learned trial court also stated that the courts, in two recent cases, had held that this witness's testimony was admissible for the purpose mentioned, but counsel for respondents has not favored this court with

a citation of those cases; and after a careful research I have been unable to find them, without the case of Bradley v. West, 68 Mo. 69, is one of them, and of the type of the other.

That case squarely holds that the death of the grantor does not render the grantee incompetent to testify in relation to the execution of a deed, when the question arises in a suit between the grantee and a stranger to the deed. That case, however, was in express terms overruled in the subsequent case of Chapman v. Dougherty, 87 Mo. 617; and the latter case has been affirmed many times since.    [Weiermueller v. Scullin, 203 Mo. 466; Bishop v. Brittain Inv. Co., 229 Mo. 699, l. c. 723; Smith v. Smith, 201 Mo. 533, l. c. 547.]

Entertaining these views of the law, we are satisfied that the defendant, Leah J. Evans, was an incompetent witness and that the trial court erred in admitting her testimony for any purpose.

II. This brings us to the consideration of the deed of August 11, 1890, set forth from Hopkins Evans

**Deed Construed.** to Leah J. Evans, his wife; and in so far as this proposition is concerned we are of the opinion that it is wholly immaterial whether the testimony of the latter, which we held in paragraph one of this opinion to have been incompetent, be considered admissible or rejected for the reason that the language of the deed is so plain, and its meaning so clear that a resort to parol testimony shedding light upon the situation of the parties and the facts and circumstances surrounding them at the time of its execution, could in no manner alter the clear import of the deed.

When we turn to the habendum clause of the deed we see that it provides that the grantees are "to have and to hold the *premises* . . . *from and after the*

*death of him the said Hopkins Evans, party of the first part."*

This language cannot be tortured into meaning that any right, title or interest in or to the real estate in question was conveyed to or was vested in the grantees prior to the death of the grantor.

Moreover, that language clearly negatives the idea that the grantor intended to convey to the grantee any interest in the property until after his death, for he says, that she is to "have and hold the premises . . . from and after his death," etc.

And in addition to this: The grantor clearly and fully expresses his intention in the latter part of the deed, where he states that "the intention of the grantor by this deed is to convey said property to said Leah J. Evans for life, *to take effect on the death of the grantor,*" etc.

What is to take effect from and after his death? Clearly the conveyance, for that is what the grantor is speaking of, for he says that by this deed he intends to *convey* said property to the grantee, *to take effect upon his death.*

This language is too clear for interpretation or construction. The more such an attempt is made the more befogged becomes the meaning of the deed, which is plain upon its face.

The following adjudications fully sustain our views of this deed: Aldridge v. Aldridge, 202 Mo. l. c. 572; Long v. Timms, 107 Mo. 512; and Speed v. Railroad, 163 Mo. 111.

III. Entertaining these views of the deed under consideration, as expressed in paragraph two of this

Deed to Take Effect Upon Grantor's Death.

opinion, namely, that it was not to take effect until after the death of the grantor, we are required by the authorities of this State to hold the deed void, because it is testamentary

in character, and not executed according to the statutes of wills.

The following cases are in point:  Miller v. Holt, 68 Mo. 584; Murphy v. Gabbert, 166 Mo. 596; Chew v. Kellar, 171 Mo. 215; Griffin v. McIntosh, 176 Mo. l. c. 398; Aldridge v. Aldridge, 202 Mo. l. c. 572; Givens v. Ott, 222 Mo. l. c. 411; Terry v. Glover, 235 Mo. 544; Jordan v. Jordan's Admr., 65 Ala. 301; Pinkham v. Pinkham, 55 Neb. 729; Carlton v. Cameron, 54 Tex. 72; Leaver v. Gauss, 62 Iowa, 314; Turner v. Scott, 51 Pa. St. 126; Cunningham v. Davis, 62 Miss. 366; Donald v. Nesbit, 89 Ga. 290; Cent. Law Jour., p. 71; 2 Devlin on Deeds (3 Ed.), secs. 309, 854; 3 Washburn on Real Prop., p. 266.

IV.  The points considered seem to be the only legal propositions which were ruled upon by the trial court; and for that reason we refrain from passing upon the other questions presented.

The foregoing views result in a reversal of the judgment and a remanding of the cause to the circuit court to be proceeded with in conformity to the views herein expressed.  All concur.