## ELIZABETH A. SMITH v. JAMES W. SMITH et al., Appellants.

### Division Two, March 5, 1907.

1. **PLEADING: General Allegations: Indefiniteness: Cured After Judgment.** Where no objection was made in the trial court that the allegations of mistake, oversight and accident in the making of a deed to plaintiff's husband rather than to her, were too indefinite, the defect as to the generality of the allegations was cured after judgment.

2. ———: ———: **Resulting Trust: Deeds.** If a husband really held the title to the lands in trust for his wife, that fact can be established by evidence, if sufficient, irrespective of whether the deed contained a trust clause or not, and irrespective of whether or not the trust clause was by accident or mistake omitted therefrom.

3. **LIMITATION: Deed to Husband of Wife's Lands: Twenty-four Years.** Where in friendly partition of the lands of plaintiff's father among his children, the deed was made to her husband instead of to her, the Statute of Limitations did not begin to run against her until her husband's death, and her suit to have a resulting trust declared and the title vested in her was not barred in twenty-four years after such deed was made.

4. **WITNESSES: Grantors in Deed of Wife's Lands to Husband.** Where plaintiff claims that in a friendly partition of her father's lands by his children, the lands agreed upon as her share were by mistake deeded to her husband instead of to her, and she asks that the title be vested in her, and the defendants assert that the husband bought and paid for the lands, the brother and sister of plaintiff who signed the deed to the husband, now deceased, are not competent witnesses in her behalf. Under the statute they are "the other party" to the contract or cause of action in suit.

5. ———: ———: **Resulting Trust: Insufficient Proof.** Where the proof that certain lands were inherited by plaintiff and her brothers and sisters, that the land in suit was set off to her un-

der a friendly partition and agreement with them, and that the deed to that land, made thirty-seven years before her husband's death, was by mistake made to him though the land belonged to her, consists of testimony of two witnesses, one of whom testified that in a conversation with the husband six or seven years before the trial he said that the lands belonged to his wife, and the other that five years before the trial the husband asked him if he knew anything of his wife's land, describing the land in suit, the testimony is not of that strong, clear and unequivocal kind that will authorize the court to declare that she has a resulting trust in the land.

6. **HUSBAND AND WIFE: Proceeds of Wife's Property.** Prior to the Married Woman's Act, lands bought by the husband with proceeds arising from his wife's property which she had inherited and which he had reduced to his possession, were his absolute property, and remained such after the enactment of the Married Woman's Act.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

*Russell & Deal* for appellants.

(1)   Plaintiff's petition does not state a cause of action: First, for the reason that it states no equity, the allegations of the mistake, accident and oversight being too indefinite. Bliss, Code Pleading (2 Ed.), secs. 211, 212.   Second, for the reason that plaintiff's right of action, if any ever existed, has long since been barred by the Statute of Limitations; the petition as well as the evidence shows that the deed was made and delivered in 1866, nearly thirty-eight years before this suit was filed.   Burdett v. May, 100 Mo. 13.   Even if the plaintiff was a married woman, twenty-four years constitutes a bar to her right to sue.   R. S. 1899, sec. 4265; Reed v. Painter, 145 Mo. 341.   As she had no children, Mr. Smith never had a right of possession as tenant by curtesy initiate.   (2)   The testimony of Mrs. Goddard and J. H. Moore was incompetent and inad-

missible because they were both parties grantor to the
deed sought to be reformed, made by them to James
Smith, who is now dead. They cannot now contradict
the deed they made forty years ago in 1866 and take
from James Smith's heirs the property they conveyed
him then, he not being here to contradict their state-
ments. Messemer v. McCray, 113 Mo. 382; Bank v.
Slattery, 166 Mo. 620; State ex rel. v. Thompson, 81
Mo. App. 549; Patton v. Fox, 169 Mo. 97; Edwards v.
Warner, 84 Mo. App. 200. (3) Courts of equity view
with disfavor suits brought long after transactions lit-
igated have occurred and after death has sealed the lips
of those familiar with occurrences. State ex rel. v.
West, 68 Mo. 229; Burdett v. May, 100 Mo. 18. (4) If
the testimony of Moore and Goddard is excluded,
plaintiff has no proof at all except witnesses Lee and
Vowels to loose remarks in ordinary conversations, to
which equity pays little attention. Cornet v. Bertel-
mann, 61 Mo. 118; Forester v. Scoville, 51 Mo. 268. (5)
The deed itself is to be taken in our behalf with all the
presumptions it carries with it of its correctness, and
before the court should decree a change of the deed
which is the solemn act of the parties, the evidence
must be plain and conclusive, both to establish a mis-
take and a trust. Bunse v. Agee, 47 Mo. 270; Modrell
v. Riddle, 82 Mo. 31. (6) Under the law in force when
plaintiff was married and when her father died and
when the deed in controversy was made, her personal
property and the proceeds of her lands became the ab-
solute property of her husband. Croft v. Bolton, 31
Mo. 355; Hart v. Leet, 104 Mo. 316; Leet v. Bank, 141
Mo. 574; Bank v. Fry, 168 Mo. 492. (7) If the prop-
erty which Mrs. Smith inherited from her father's es-
tate was reduced to Mr. Smith's possession and the pro-
ceeds used in buying any or all of the land, such shares
so bought under the law then in force became the abso-
lute property of Mr. Smith. Rogers v. Bank, 69 Mo.

562; Tillman v. Tillman, 50 Mo. 40; Kidwell v. Kirkpatrick, 70 Mo. 214. So that the interests which were conveyed to James Smith by the administrator of Ben J. Moore and his widow unquestionably belong to the estate of said Smith. (8) Plaintiff has not made out such a case as will warrant the court in reforming this deed, because the rule is that to prove a trust or reform a deed the testimony must be so clear, strong and unequivocal as to banish any reasonable doubt from the mind of the chancellor respecting the existence of such trust. Burdett v. May, 100 Mo. 16; Forester v. Scoville, 51 Mo. 268.

*Boone & Lee,* with *O'Bryan,* for defendant.

(1) That the petition states a cause of action is too plain to discuss. The statement that by accident or mistake the trust clause was omitted, is a statement of fact, not a conclusion of law. Mistake of law or fact on the part of the maker of an instrument will be corrected by a court of equity. Ellsworth v. Quade, 28 Mo. App. 421; 3 Wait, Actions and Defenses, p. 164; Leitensdorfer v. Delphy, 15 Mo. 160. In the case at bar, the parties all thought that they were conveying the land in trust; the writer of the deed himself thought so, and testified to that effect. (2) No cause of action accrued in this case until after the death of Jas. Smith in 1902. Under the law he had the exclusive right to the possession of his wife's real estate. He never asserted title to it under the deed in question. He always considered it as her property and neither he nor his wife knew any better during his life, and there was no assault on her title until an adverse claim was made by the heirs of her husband. This suit was brought to the April term, 1903; therefore, respondent is not barred by the statute of limitation, neither does the twenty-four-year Statute of Limitation bar her. Bradley v. Railroad, 91 Mo. 497; Graham v. Ketchum, 192 Mo. 20; Dyer v. Witler,

89 Mo. 84; Boynton v. Miller, 144 Mo. 681. (3) Section 4652, Revised Statutes 1899, removes the common law disability of parties in interest to testify, and excepts when one of the parties is dead, insane, etc. Neither Moore nor Goddard are parties or in any manner interested in the results of this law suit; nor were they the agents of Mrs. Smith. The question at issue here is not the contract between them and James Smith, but the implied contract between Mrs. Smith and James, arising from the fact that he wrongfully, ignorantly or by mistake had the deed made to himself, and not to her; or failed to have a trust clause inserted in the deed. J. H. Moore, who wrote the deed, was as much his agent as he was of Mrs. Smith. Ess v. Griffith, 139 Mo. 329. The admissions of the party holding legal title are admissible to establish a resulting trust. Rice v. Shipley, 159 Mo. 403; Price v. Kane, 112 Mo. 412. The Supreme Court will not set aside the finding of the chancellor unless manifestly against the weight of evidence. Hartly v. Hartly, 143 Mo. 216; Roberts v. Stone, 91 Mo. App. 425. The facts in this case warranted the finding and judgment of the trial court.

BURGESS, J.—In 1857 Charles Moore died intestate, owning the land involved in this litigation and other land and personal property. He left surviving him seven children, namely, Eliza J. Goddard, Elizabeth A. Smith, this plaintiff, Nancy Parrot and Susan A. Swank, daughters, and Charles C. Moore, Joseph H. Moore and Benjamin J. Moore, sons, his only heirs-at-law. In 1864 Benj. J. Moore died, and Joseph C. Moore was duly appointed his administrator, and qualified as such.

Prior to the 6th day of April, 1866, the plaintiff, Elizabeth A. Smith, was united in marriage to James Smith, and remained his wife until his death in 1902. Said James Smith was the father of the defendants,

James W. Smith, Silas S. Smith and Elizabeth Brid-
well, and the grandfather of Henry E. Sherman, who is
the only heir of Sarah, deceased, a daughter of James
Smith, also the grandfather of Ida Ross, wife of Emil
E. Ross, and Mattie Deal, wife of E. J. Deal, the said
Ida Ross and Mattie Deal being the only surviving
heirs of Ellen, a daughter of James Smith.

The petition alleges:

"That on the 6th of April, 1866, the then sur-
viving children of Charles Moore, tenants in common,
owning the real estate left by said Charles Moore, by
mutual consent and agreement, made division and par-
tition of the lands so derived and so owned as tenants
in common, setting apart to each lands of the estima-
ted value of fourteen hundred dollars; that, thereunder,
there was set apart to Elizabeth Smith the following
parcels of land in Mississippi county, Missouri, name-
ly: The southeast quarter of the southwest quarter of
section two and the north half of the northwest quarter
of section eleven, township twenty-six, range sixteen,
also the southwest quarter of section fifteen, township
26, range 17, in Mississippi county, Missouri, and there
was also set aside to each of the other heirs and chil-
dren, lands of an equal value and, on said dates, deeds
were executed, signed by all the heirs, as grantors to
each of said heirs as grantees, giving effect to, carrying
out and conveying the lands as per agreement, and on
said 6th April, 1866, to carry out said agreement of
partition, Joseph H. Moore and wife, Anne; Nancy M.
Parrot and husband, Beverly; Charles C. Moore and
wife, Joan; Susan A. Swank and husband, A.V., and El-
len J. Goddard, by their deed of that date, undertook
to convey to James Smith the above-described lands in
trust for his wife Elizabeth, to whom they then be-
longed, but by mistake, accident and oversight the
clause necessary to create the trust was unintentionally
omitted in said deed, though said deed was received

and accepted by said James Smith with such understanding and intent. That while the sum of fourteen hundred dollars is recited in said deed as a consideration for said conveyance of land, yet in truth and fact, no money was passed, given or received therefor, but the sole consideration upon which said conveyance of lands was based was the agreement of division and the conveyance of other lands of like and equal value in which the said Elizabeth had a one-seventh interest, and that said lands and said conveyance were accepted by said James Smith as a trustee for the use and benefit of his wife, Elizabeth, who in after life so treated it. She further states that during the life of said Smith, he and the plaintiff sold and conveyed the lands in section 2 and section 11, and that the lands in section 15 is all that is left of said trust property.

"She further states that in 1868, Joseph C. Moore, administrator of B. J. Moore, conveyed the one-seventh interest of said land held as tenant in common by B. J. Moore to Smith; that the consideration paid therefor was paid out of moneys arising from the sale of plaintiff's land and that said Smith took said conveyance in trust for his wife and that, through mistake and accident, a trust clause in said deed was omitted and that after that, on 28th April, 1871, Althea, the widow of B. J. Moore, then the wife of Fields, conveyed her dower right, derived from B. J. Moore, to said Smith; but he also took said conveyance in trust for his said wife and through mistake and accident the trust clause was omitted in said deed but that said Smith always regarded and treated the property as hers; that said land is of right and in equity the plaintiff's property.

"That said Smith died without will and that under the laws a large real estate owned by him in his own right descended to his heirs subject only to the widow's dower. That Henry E. Sherman and Ida Ross and Emil E. Ross are non-residents of this State, so

that the ordinary process of law cannot be served on them; that Silas S. Smith is a resident of St. Francois county, Missouri; the other defendants are residents of this county.

"Wherefore, she prays that the title so acquired by James Smith to the southwest quarter of section 15, township 26, range 17, in Mississippi county, Missouri, under the several deeds mentioned, be decreed to be held in trust for the plaintiff and that the title thereto be divested out of defendants and invested in the plaintiff by the proper orders and decrees of this court, and for general equitable relief and for costs."

The answer of the defendants is as follows:

"Now come the defendants and for their answer herein they admit that in the year 1857, Charles Moore died in Scott county, Missouri, intestate and that he left lands situate in Scott and Mississippi counties, which under the laws of descents and distribution descended and became vested in his children and heirs, as tenants in common; and that the children and heirs to whom the land descended were Eliza J. Goddard, Elizabeth A. Smith, Nancy Parrot, Charles C. Moore, Susan A. Swank, Joseph H. Moore and Benjamin J. Moore, and that on April 6, 1866, and long prior thereto, Elizabeth Smith was married to James Smith and remained his wife until 1902, at which time he died; that he is the father of the defendants, James W. Smith, Silas S. Smith, Elizabeth Bridwell, and the grandfather of Henry E. Sherman, Ida Ross and Mattie Deal, and that said James Smith died intestate and that his real estate descended to his said heirs subject only to the widow's dower.

"Defendants further answer deny each and every allegation in the plaintiff's petition contained, except those above expressly admitted and ask judgment for costs."

The court found the issues for the plaintiff, and rendered the following judgment:

"It is therefore ordered, considered, adjudged and decreed that the land, the southwest quarter of section 15, township 26, range 17, in Mississippi county, Missouri, acquired by said Smith through the several deeds above mentioned, viz.: the deed of April 6, 1866, from Joseph H. Moore et al., to Smith, the deed of 1868 from Ben J. Moore by administrator to James Smith, the deed of April 28, 1871, from Althea Fields to James Smith, be and the same is deemed to have been taken and held in trust for Elizabeth Smith and that all right, title, interest and estate therein accruing to said heirs by virtue of said deeds be and the same is divested out of them severally and jointly and invested in the plaintiff, Elizabeth Smith."

In due time defendants filed motions for new trial and in arrest of judgment, which were overruled, and they appeal.

The facts developed by the evidence are about as follows:

Charles Moore, in 1857, died intestate, owning the land in dispute as well as other lands and personal property which descended to his seven children and heirs named in the petition, one of whom, the plaintiff, Elizabeth Smith, was the wife of James Smith from 1849 to his death in 1902.

In 1866 five of Charles Moore's children conveyed their five-sevenths interest in the land in suit to James Smith by ordinary deed of conveyance for a stated consideration of $1,467, and about the same time said heirs conveyed to Mrs. Parrot, one of the heirs, eighty acres of the land for a stated consideration of $386, and to the wife of Joseph H. Moore, he being one of said heirs, other land for a stated consideration of $368. The plaintiff, wife of James Smith, did not join in a conveyance to him, and she still owns her one-seventh

interest in said land. The one-seventh interest of Benj. J. Moore, deceased, was conveyed by his administrator, several years later, to said James Smith for $189.20, and his widow also conveyed her dower interest to said James Smith for seventy-five dollars.

James Smith died intestate in 1902, seized of six-sevenths interest in said land, and left the defendants as his sole heirs, they being the descendants of his first wife, not of his widow, the plaintiff in this suit, who had no issue.

After the death of James Smith this suit was filed by the plaintiff to divest title out of the defendants and invest same in her, on the theory that the heirs of Charles Moore agreed on an equal division of lands, that each got land of equal value, and that the deed was made to James Smith in trust for his wife, but by mistake, accident and oversight a trust clause was unintentionally omitted from said deed.

But the defendants contend that the land was sold to James Smith for $1,467 by the five heirs, and paid for by him, and that, later, the Benj. J. Moore interest was likewise bought and paid for by the said James Smith.

J. H. Vowels testified that in a conversation with James Smith, now deceased, he heard Smith state that the land belonged to his wife. Walter Lee also testified that five years ago Mr. Smith in his lifetime asked him about the land on Rush Ridge, saying: "Did I know anything about Elizabeth's land." Eliza J. Goddard, a sister of plaintiff and a party to the deed in controversy made to James Smith, deceased, stated that she was eighty years of age and that the lands of her father's estate were divided after the war; that her sister Elizabeth A. Smith got the Rush Ridge place; no money consideration passed; each one received land for his or her part. "My sister's land was deeded to Mr. Smith in trust for her; that was my understanding;

my father's land was divided equally as well as we could; no money was paid over; Susan Swank, my sister, got no land, but she got other property. It might have been money." Joseph H. Moore, a brother of plaintiff, testified that he was 67 years old. "My father's lands were divided by the heirs in 1866; we didn't take much consideration of the value of the land; it was my understanding that the sole consideration was the division of the land. I wrote the Smith deed and asked to whom it should be made; she said it made no difference on her part. Mr. Smith said, 'Well, just make it to me; everybody knows it comes through Elizabeth's father to her.' He said he would hold the property as her land. Benj. J. Moore was dead, and no land was set off for him. I don't think Susan Swank got any land. She got a lot of property amounting to a good deal more than her interest in these tracts of land. She had already got property enough to equalize the property the others got in land. She joined in those deeds, because she had received an equivalent. Mr. Smith told me it took all the money he got out of Elizabeth's interest to pay for the interest of Benj. Moore and his widow in said land. I reckon it was backwardness on my part that I did not express in the deed that the land was to be held by him for her. I think Mrs. Smith could have heard the conversation about his telling me. In regard to the consideration being uneven amounts in the different deeds I might suggest these people got more slaves or something than the others did; it was evened up in the personal property; it might have been that way. Mrs. Parrot may have got more slaves than Mrs. Smith's folks. Mrs. Swank did not get any land at all, but a great deal more personal property than any of the rest."

Elizabeth A. Smith, the plaintiff, testified: "I knew it all the time that I owned the land in controversy."

Elizabeth Bridwell, on behalf of the defense, testified: "I never in the world heard the plaintiff say it was her property and never heard my father say it was hers. I have heard my father say what it cost him; he said he bought it at the division of the Charles Moore estate."

James W. Smith testified: "I have talked with my father about this land, and never heard him claim or state that it was his wife's property. I talked with him twice in his wife's presence, and she did not say it was her property. She never did, prior to my father's death, say anything to me about being the owner of the land; in 1866 I was living on the farm with father. I heard father say any person that would pay him back the money he paid out on the land, with interest, could have the land."

E. J. Deal testified: "I spoke to James Smith twice about buying this land; his wife was present both times. Mr. Smith said he had owned it a long time and could not get what it cost him. Nothing was said about the land going to his wife. Mrs. Smith made no claim to ownership."

The settlements of Charles Moore estate show that the personal property amounted to about $3,200, and that James Smith received $216.10, A. V. Swank, $96.-55, and Beverly Parrot, $29.15.

The petition is assailed upon the ground that the allegations of mistake, accident and oversight are too indefinite. But no objection was taken to it in the court below, and the defect as to the generality of the allegations was cured after judgment. [Sec. 672, R. S. 1899.] It is not like a case where the petition fails to state a cause of action, for then the defect is not cured by verdict, and objection may be raised in the Supreme Court for the first time.

But the allegations in the petition to the effect that the grantors in the deeds to the lands in question under-

took to convey to James Smith said lands "in trust for his wife Elizabeth, to whom they then belonged, but by mistake, accident and oversight, the clause necessary to create the trust was unintentionally omitted in said deeds, though said deeds were received and accepted by James Smith with such understanding and intent," seem to have been made by way of inducement, and as preliminary to the allegations of fact constituting the trust, because the prayer of the petition is that "the title acquired by James Smith to the land, under the several deeds mentioned, be decreed to be held in trust for the plaintiff, and that the title thereto be divested out of defendants and invested in the plaintiff;" and the judgment is in accordance with the prayer to the petition. If James Smith really held the title to the land in trust for his wife, it could be established by evidence, irrespective of the deeds, if sufficient for that purpose.

A point is made with respect to plaintiff's right of action, which, defendants contend, accrued on the 23rd day of March, 1866, the date of the execution of the deed by five of the heirs of Charles Moore to James Smith, or more than thirty-seven years before the institution of this suit, and is, therefore, barred by the twenty-four-year Statute of Limitations. But at the time James Smith acquired the title to the land, March, 1866, he had the right to the exclusive possession of his wife's land. Prior to our statutes restricting the common law rights of the husband in the lands of the wife, the seizin and possession of such lands, with the right of action for their possession, were transferred by the marriage to the husband. Therefore, the right of action for the possession of the land in question being in plaintiff's husband, he did not hold adversely to her (Boynton v. Miller, 144 Mo. 681), and the twenty-four-year Statute of Limitations (sec. 4265, R. S. 1899) did

not commence to run against her until his death in 1902. [Dyer v. Wittler, 89 Mo. 84; Bradley v. Railroad, 91 Mo. 497; Boynton v. Miller, supra; Graham v. Ketchum, 192 Mo. 20.]

Upon the trial, J. H. Moore testified as a witness for plaintiff, and the deposition of Eliza J. Goddard was read in plaintiff's behalf, although said evidence was objected to at the time by defendants upon the ground that J. H. Moore and Eliza J. Goddard were parties grantors to the deed made to James Smith on the 23rd day of March, 1866, and sought to be reformed. Section 4652, Revised Statutes 1899, provides that no person shall be disqualified as a witness in any civil suit, and then adds: "Provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him," etc. One of the deeds by which it is alleged the grantors therein undertook to convey to James Smith the land therein mentioned in trust for his wife, Elizabeth Smith, but from which, by mistake, accident and oversight, the clause necessary to create the trust was omitted, and which is sought to be corrected, was executed by five of the children and heirs of Charles Moore; and the other deed, sought to be corrected in the same manner, was by the administrator of Benj. J. Moore, another heir. This suit is against the children and grandchildren of James Smith and his first wife. James Smith, the grantee in said deeds, being dead at the time of the trial, and the suit being for the correction of said deeds, the other parties to the contract or cause of action are incompetent under the statute (sec. 4652, R. S. 1899) to testify in favor of any party to the action claiming under him, and as plaintiff claims under said

deeds of James Smith, and as J. H. Moore and Eliza J. Goddard were parties to one of said deeds, they were incompetent as witnesses for any purpose whatever. [Angell v. Hester, 64 Mo. 142; Ring v. Jamison, 66 Mo. 424; Wood v. Matthews, 73 Mo. 477; Chapman v. Dougherty, 87 Mo. 617; Leeper v. Taylor, 111 Mo. 312; Teats v. Flanders, 118 Mo. 660; Curd v. Brown, 148 Mo. 82; Miller v. Slupsky, 158 Mo. 643; Patton v. Fox, 169 Mo. 97.]

Without the testimony of these two witnesses the question with which we are confronted is as to whether the evidence was of a character such as to establish a resulting trust in favor of the plaintiff. "In order to prove such a trust it must be established by testimony so clear, strong and unequivocal as to banish every reasonable doubt from the mind of the chancellor respecting the existence of such trust. This is the substance and effect of the language employed by the authorities, and by this court in numerous instances." [Burdett v. May, 100 Mo. l. c. 16; Johnson v. Quarles, 46 Mo. 423; Forrester v. Scoville, 51 Mo. 268; Ringo v. Richardson, 53 Mo. 385; Kennedy v. Kennedy, 57 Mo. 73; Gillespie v. Stone, 70 Mo. 505; Philpot v. Penn, 91 Mo. 38; Berry v. Hartzell, 91 Mo. 132.]

The testimony tending to establish the trust is entirely made up of verbal admissions made by the husband of plaintiff upon two different occasions from four to seven years before the trial. Upon this subject Mr. Greenleaf says: The evidence consisting, as it does, in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say." The only testimony to be considered as tend-

ing to establish the trust was that of witnesses J. H. Vowels and Walter Lee. Vowels testified that in a conversation had with James Smith about six or seven years before the trial, Smith said that the land belonged to his wife. Walter Lee testified that five years before the trial Mr. Smith asked him "about the land on Rush Ridge," and if he "knew anything about Elizabeth's land," meaning his wife, the plaintiff. The evidence on the part of the defendants was of a negative character. Plaintiff insists that these admissions by James Smith were sufficient to show that he held the title to the land in question in trust for his wife, the plaintiff. Price v. Kane, 112 Mo. 412, is relied upon as sustaining this contention; but in that case the wife bought the land in controversy with her husband's money, taking the title in her own name, but declared at the time that it was purchased for her husband and that she held the title in trust for him. The testimony in that case was much stronger than in the case at bar, and clearly established the trust. Rice v. Shipley, 159 Mo. 403, is also relied upon by plaintiff. But that case is distinguishable from this, in that the money which bought the land in this State was the separate property of a married woman under the laws of another State at the time she came to this State, and it was correctly held that, as it was clearly shown that the said money was the wife's separate property under the laws of another State, and that it came into her husband's possession by her consent for the purpose of buying a home for them and their children, he took the title in trust for her, and her heirs after her death. In the case at bar the wife had no separate property. Besides, there was no agreement between plaintiff and her husband by which he was to purchase the land and hold it in trust for her.

The title to the land remained in plaintiff's husband for thirty-seven years before his death, and, according to the evidence, during all that time he was

never heard to say, except upon two occasions, from six to seven years before his death, that the land belonged to his wife, or that he held it in trust for her. When we take into consideration the fact that the repetition of verbal statements is subject to much imperfection and mistake, and the length of time between the acquisition of the title to the land by James Smith and the date of his death, during all of which time, except upon two occasions, it is not shown that he spoke of the land as belonging to plaintiff or did anything which tended to show that he treated it or regarded it as her land, we must hold that the claim of plaintiff has not been established as required by the authorities quoted.

With respect to the deed from Joseph C. Moore, administrator of the estate of Benjamin J. Moore, deceased, conveying one-seventh interest in the land in controversy to James Smith, there was no evidence whatever tending to show that Smith took said conveyance in trust for his wife, the plaintiff, or that, through mistake or accident, a trust clause in said deed was omitted.

Moreover, if the property which plaintiff inherited from her father's estate was reduced to her husband's possession, and the proceeds arising therefrom used in buying any or all of the land in question, the interests so bought became the absolute poperty of her husband under the law in force at the time. [Tillman v. Tillman, 50 Mo. 40; Rodgers v. Bank of Pike County, 69 Mo. 560; Kidwell v. Kirkpatrick, 70 Mo. 214.]

It follows that the interest in the land which was conveyed to James Smith by the administrator of Benj. J. Moore became the property of Smith, free from any claim of right, equitable or otherwise, in the plaintiff.

Our conclusion is that the judgment should be reversed. It is so ordered.

All concur.