# SOUTHERN BANK OF FULTON, Appellant, v. RICHARD H. NICHOLS et al.

### Division Two, June 20, 1911.

1. **RESULTING TRUST: Deed to Husband: Bought With Wife's Choses: Reduction to His Possession.** Where the only consideration for the individual deed from the administrator of the estate of the wife's father to her husband was a release of her share of the personal estate, a trust resulted to her the moment the deed was executed, whereby she became the equitable owner of the property, and the legal title in her husband was held by him in trust for her as the beneficial owner, unless her interest in her father's personal estate was actually or constructively reduced to his possession *jure mariti* by the husband before or contemporaneously with the making of the deed to him.

2. ——: ——: ——: ——: **Intention.** A husband exercising his common law right during coverture to acquire title to his wife's choses in action must intend, by the act by which he possesses himself of her property, to make it his own. If his intention is not to so exercise his marital right as to make the property his own, but to act only for and on behalf of her, then an act which otherwise under the common law would amount to a reduction to his possession will not have that effect.

3. ——: ——: ——: ——: ——: **Giving Joint Receipts.** Where the wife and husband gave a joint receipt to the administrator of her father's estate for her interest in his personal estate, and a similar joint receipt to the sheriff to cover the wife's interest in the proceeds of sale in partition of her father's land, but in neither case was any money received by either, and the evidence is clear and positive that their intention in so doing was that the receipts might be used by the administrator and sheriff in full acquittance of payments of money to her and her husband, and that this money was to be the purchase price for the land in suit, and the individual deed of the administrator was made to the husband and recorded, and was found among the grantor's papers after his death, and the husband testified that he never bought any land from the grantor, and never paid anything for the land conveyed, and never knew the land had been conveyed to him until after the grantor's death and until after his indebtedness to plaintiff had arisen, it will be *held* that the husband had not reduced the

235 Sup.—26

wife's choses in action (her interest in her father's estate) to his possession, and that a resulting trust in the land in favor of the wife existed from the time the deed to the husband was made.

4. ———: ———: ———: Laches: Estoppel: No Knowledge. Where the land, bought with the wife's money, was conveyed to her husband in 1868, and the deed was recorded, but kept by the grantor until after his death, and the husband paid the taxes and the family lived upon the land, recognizing it as hers, and she had no knowledge that the deed named her husband as grantee until after plaintiff's claim against him as surety on a note had originated, and she promptly asserted her title at public outcry when the sheriff in 1901 undertook to sell the land under plaintiff's judgment against her husband, and set up her title as soon as she was made a party to the litigation, she is not barred either by laches or estoppel to assert her equitable title against plaintiff.

Appeal from Callaway Circuit Court.—*Hon. R. S. Ryors,* Special Judge.

AFFIRMED.

*T. A. Boulware, I. W. Boulware,* and *Silver & Dumm* for appellant.

(1)  The Supreme Court is not bound by the finding of the trial court in an equity case.  Bank v. Nichols, 202 Mo. 309; Lacks v. Bank, 204 Mo. 479; Waddington v. Lane, 202 Mo. 415; N. E. Trust Co. v. Browne, 177 Mo. 412; Swon v. Stevens, 143 Mo. 396; Benne v. Schnecko, 100 Mo. 251.  (2)  The marriage of Mary A. Nichols and R. H. Nichols having taken place in the year 1862, that is, prior to the taking effect of the Married Woman's Act of March 25, 1875 (Laws 1875, p. 61), the right of the husband, R. H. Nichols, to the personal property and choses in action of his wife was not affected by that act.  Smith v. Smith, 201 Mo. 549; Winn v. Riley, 151 Mo. 61; Leete v. Bank, 141 Mo. 584; Leete v. Bank, 115 Mo. 185; Glaves v. Wood, 87 Mo. App. 92; Nat'l Bank v. Fry, 168 Mo. 492; Terry v. Wilson, 63 Mo. 493.  Conceding here for sake of ar-

gument the contention of respondent's counsel, and the theory on which the case was tried and decided below, that the distributive shares or interest of Mrs. Mary A. Nichols in her father's estate constituted the real consideration to Felix G. Nichols for the deed of March 20, 1868, to Richard H. Nichols, yet such shares and moneys so going to Mrs. Nichols being choses in action were susceptible of reduction to possession by her husband, Richard H. Nichols. Further, the matters in evidence and all the attendant circumstances show such reduction in law to the husband's possession, and such being the case, the deed of March 20, 1868, legally vested the title to the land conveyed by Felix G. Nichols in Richard H. Nichols, and Mary A. Nichols for that reason is not the equitable owner of said land, and cannot prevail in this action. 1 Bishop on Law of Married Women, sec. 117; Howard v. Bryant, 9 Gray (Mass.) 239; Dixon v. Dixon, 10 Ohio, 116; Needles v. Needles, 7 Oh. St. 437; Griswell v. Penniman, 2 Conn. 564. The evidence shows that R. H. Nichols, the husband, as well as the wife, executed the receipts to the administrator for the wife's share of the personal estate of her father, William Nichols, and that similar receipts were executed to King, the sheriff, for the proceeds of the partition sale. The purport and effect of the husband's conduct was in law to reduce to possession and to appropriate the moneys due his wife from the estate of her deceased father. It is wholly untenable to say that he did not know the deed was made to him, or that it was not delivered to him. Whatever ought to have been known from an examination of the land records, the law presumes was learned. Dickinson v. Bridges, 147 Mo. 245; Johnston v. Standard Oil Co., 148 U. S. 360. Again, the fact that R. H. Nichols made and executed the deed to his children on November 29, 1899, shows his knowledge and acceptance of the prior deed to him. Hall v. Bank, 145 Mo. 418; Benton Land Co. v. Zeitler,

182 Mo. 82; Peters v. Berkemeier, 184 Mo. 402. The parol evidence or oral statements of R. H. Nichols that he only intended to convey his wife's interest, of course, are of no value. The language of the deed controls; it speaks for itself. Gorton v. Rice, 153 Mo. 676; Johnson Co. v. Wood, 84 Mo. 513; Hydraulic P. B. Co. v. Neumeister, 15 Mo. App. 592.

*A. Finley* and *Harris & Hay* for respondent.

(1) The undisputed evidence in this case is to the effect that the land in controversy was exchanged by Felix G. Nichols to Mary A. Nichols, respondent, for the latter's interest or share in her father's estate; and that her said interest or share in her father's estate constituted the entire consideration received by said Felix G. Nichols for said land. Hence, whether the deed subsequently executed by Felix G. Nichols to R. H. Nichols, husband of Mary A. Nichols, was in legal effect delivered to R. H. Nichols (as appellant contends) or was not delivered (as respondent contends), Mary A. Nichols is the equitable owner of said land and is entitled to decree vesting title in her. Shaw v. Shaw, 86 Mo. 594; Plumb v. Cooper, 121 Mo. 668; Hardware Co. v. Horn, 146 Mo. 129; Crawford v. Jones, 163 Mo. 577; Prewitt v. Prewitt, 188 Mo. 675; Frost v. Frost, 200 Mo. 474; Heil v. Heil, 184 Mo. 675. The evidence in this case meets all the requirements of the strict rule of proof in cases of this character. The evidence both oral and documentary is clear and conclusive. Crawford v. Jones, 163 Mo. 577; Prewitt v. Prewitt, 188 Mo. 675. (2) Respondent as heir and distributee of her father's estate had an interest in both the realty and the personalty of said estate. Her interest in the realty passed to her direct as heir, and title thereto vested in her and not in her husband. Her interest in the personalty of her father's estate passed to the administrator of said estate and she was not

entitled to possession of her share or part of said estate until final settlement of, and distribution of the proceeds of the estate by the administrator. Inasmuch as respondent, with the consent and approval of her husband, prior to the partition and sale of the realty, and prior to the final settlement of, and distribution of the proceeds by the administrator, exchanged her interest in the estate, both real and personal, for the land in controversy, it cannot be said that her interest in the said estate ever was reduced into the possession of her husband. Leaky v. Maupin, 10 Mo. 368; Gillet v. Camp, 19 Mo. 404; Wood v. Simmons, 20 Mo. 364; Croft v. Bolton, 31 Mo. 355; Green v. Tilman, 124 Mo. 372.

## STATEMENT.

BOND, C.—This case was here on a former appeal, 202 Mo. 309. In that case the only issue was the validity of a quitclaim deed made by R. H. Nichols to his children (which his wife refused to sign) as against a purchaser of the land at execution sale under a judgment against the grantor, obtained subsequently to the deed.

The wife of the grantor in said quitclaim deed "having refused to sign it," this court reversed and remanded the cause. Thereupon, the plaintiff corporation filed an amended petition, stating, in substance, that it was a judgment creditor of R. H. Nichols, who executed the quitclaim deed to said land to his children to hinder, delay and defraud plaintiff, and that the grantees accepted to aid said purpose; that the deed was a cloud on said title to said land, which plaintiff had acquired by purchase at an execution sale under its judgment, and prayed the removal of said cloud and for general relief.

Mary A. Nichols, the mother of one of the grantees, who had died pending said litigation, was made defendant, and answered separately said amend-

ed petition, and averred that she was the wife of the grantor in said quitclaim deed since their marriage in 1862; that about March 20, 1868, she purchased the said land from one Felix G. Nichols for the price of $1750; that the deed was wrongfully made to her husband instead of being executed to her, as the vendor had agreed to do; that her husband wrongfully quitclaimed said land in November, 1899, to their children; that the land was wrongfully levied upon and sold in 1900 under a judgment in favor of the plaintiff against her husband and another, a deed made to plaintiff, who bought said land with knowledge of her claim of title thereto; that she was the equitable owner of said land, wherefore she prayed the cancellation of the quitclaim of her husband and the sheriff's deed to plaintiff as clouds on her title, and that the full title to said land be adjudged to be in her.

Plaintiff replied to this separate answer of Mary A. Nichols by a general denial and the further defense of laches and estoppel, alleging delay on the part of Mary A. Nichols in the assertion of her title, and that she had permitted the deed to remain in her husband, and permitted the land to be assessed and taxed against him, and permitted him as owner of the record title to obtain credit from plaintiff.

On these issues the evidence was uncontradicted, that Mary A. Nichols and R. H. Nichols were cousins and intermarried in March, 1862; that during their marriage and while the father of R. H. Nichols, to-wit, Felix G. Nichols, was administrator of the estate of the father of Mary A. Nichols, to-wit, William G. Nichols, the said Mary A. Nichols and her husband, R. H. Nichols, signed receipts to said administrator for $464.88, on May 8, 1867, and for $69.50 on April 20, 1868; and that they also signed a receipt to the sheriff after the sale in partition of the lands belonging to Mary A. Nichols and other children of her deceased father for the sum of $960 in April, 1868; that on

March 28, 1868, said Felix G. Nichols recorded a warranty deed for 140 acres of land to his son A. H. Nichols for a recited consideration of $3500 in cash, which deed embraces the land in dispute in this case; that in November, 1899, R. H. Nichols, his wife not joining, quitclaimed the land in dispute to his children for the recited consideration of $1500, and on the——day of 1900, said land was sold by the sheriff to satisfy an execution in favor of plaintiff and against R. H. Nichols; that at the sheriff's sale the said Mary A. Nichols gave public notice in writing to all concerned that she claimed to own in fee the land about to be sold, of date May 20, 1901.

The plaintiff adduced other evidence tending to show that until the land was quitclaimed, it was assessed against R. H. Nichols, who was the record owner and who paid the taxes, and with his family lived upon the land and cultivated it. After June, 1900, the land was assessed against Hershel Nichols, as agent; that it was worth $25 per acre in 1899; that when the loan was made by plaintiff a note of James I. and R. H. Nichols was given therefor; that plaintiff's information was that R. H. Nichols was a landowner and would make the note good, and in that belief made the loan.

The defendant Mary A. Nichols testified on her own behalf that her interest in the personal and landed estate of her father was estimated before distribution at $1760; that her husband's father was administrator of her father's estate, and while such, and before settlement, offered her the land for her interest in the entire estate of her father, real as well as personal; that she accepted the offer and he agreed to make her a deed to the land; that she never received any money for the receipts which she gave to the administrator and sheriff; that she gave these so that those officers could make proper settlements; that the money represented by them was the price of the 140 acres her uncle

had agreed to sell her for a home; that she never knew the deed had been made to her husband instead of to herself until the deed was found by one of her children in an old trunk belonging to her uncle, after his death; that she got this knowledge "after this trouble came up." Hershel Nichols testified this occurred one or two years after the death in 1893 of F. G. Nichols, the administrator.

Mrs. Emma Wright testified that she overheard the trade between F. G. Nichols, the administrator of the estate of the father of Mary A. Nichols, whereby he agreed to deed to Mary Nichols the 140 acres for a home in consideration that she would give him her interest in her father's real and personal estate; that she heard this conversation while she lived at the house of F. G. Nichols, and when she was thirteen or fourteen years of age.

R. H. Nichols testified that his father traded the land—140 acres—for his wife's interest in her father's estate; that after the agreement to trade, his father said to him that he had made a deed to the land and recorded it; that witness did not see the deed; that it was never delivered to him; that he first saw it in the old trunk belonging to his father, after his death; that he and his children thought the land belonged to his wife, and when he quitclaimed it to his children he only intended to convey his marital rights to his wife's land.

OPINION.

I. A careful consideration of the evidence in this case leaves no room for doubt that the interest of Mary A. Nichols in the personal and real estate of her father was the only consideration received by Felix G. Nichols for the 140 acres of land for which he recorded a deed on March 28, 1868. Unless this interest in her father's estate was actually or constructively reduced to possession *jure mariti* by her husband before or contemporaneously with the making of the deed to him, a trust

resulted to the wife at the moment the deed was made, whereby she became the equitable owner of the property, and the legal title in her husband was held by him in trust for her as the beneficial owner. Such equitable estate in the wife will prevail over the claims of any creditor of the husband in whom the legal title was vested, unless such creditors should establish by proof such conduct of laches on her part as would estop her from asserting title against them. For, in the absence of a superior equity, her full equitable title would prevail against the naked trustee or his creditors.

This narrows the case to two propositions. First, did the husband actually or constructively reduce to possession in virtue of his marital rights the choses in action belonging to his wife in 1868? Second, if not, is the wife barred either by laches or estoppel from asserting her title to the land in dispute?

Discussing the first question. In the nature of things a husband when exercising his common law right during coverture to acquire title to his wife's choses in action must intend by the act whereby he possesses himself of the property to make it his own. If his intention is not to exercise his marital right by making the property his own but only to act for or on behalf of his wife, then the act on his part which would otherwise amount to a reduction to possession will not have that effect, and the property will not become his own even under the rules of the common law in vogue when these transactions occurred. [Schouler on Domestic Relations (5 Ed.), sec. 84; Schouler on Husband and Wife, secs. 154, 155, 156 and 157; 15 Am. and Eng. Ency. Law, p. 826; Winn v. Riley, 151 Mo. 61; Terry v. Wilson, 63 Mo. 499.]

It is optional with the husband whether he will reduce to possession the recoverable choses in action belonging to his wife. His right so to do is a purely personal one, which he may waive, and his creditors cannot force him to exercise it. Even when the hus-

band intends to make the choses in action of his wife his own by reducing them to his possession during coverture, he cannot do so by merely assigning one that is not then due or recoverable, for it would be contradictory to say that such an act reduced a thing to possession which was still only a right in action. [Croft v. Bolton, 31 Mo. l. c. 360-1; Wood v. Simmons, 20 Mo. l. c. 371; Gillet v. Camp, 19 Mo. 405.]

The only way he could reduce choses in action to possession in the sense used in the law would be to get satisfaction by suit or contract or by altering the securities. [Pickett v. Everett, 11 Mo. 568.]

In the case at bar the joint receipt of the husband and wife was given to the administrator before final settlement and distribution of the estate of the wife's father, and a similar joint receipt was given to the sheriff to cover the wife's interest in the proceeds of sale in partition of her father's land. No money was received by either of the spouses when the receipts were given by them nor afterwards. As to their intent in so doing, the evidence is positive and clear that these receipts were to be used by the adminstrator and sheriff in full acquittance of payments of money to the husband and wife, and that the money specified was to be the purchase price of the conveyance of the 140 acres of land by the administrator to Mary Nichols.

Under this evidence, it cannot be said that the joinder of the husband in the receipts was a reduction to his possession of the money which his wife was entitled to receive from her father's estate, and which was not paid to either of them, but which was retained and appropriated by the administrator of the wife's father as the consideration for the sale of a tract of land. Plainly, the husband never at any time "exercised absolute dominion over the property without the concurrence of his wife," intending, when so doing, to make it his own in virtue of his being her husband, which is the general test of reduction to possession.

The law is clear that the mere joinder of the husband in the wife's receipt for her choses in action does not constitute a reduction to possession, for that is the proper form when the fund is placed in the wife's hands. [Schouler on Husband and Wife, sec. 154, p. 180.]

Here no money whatever was received for the receipts; necessarily, therefore, the husband did not possess himself of his wife's money. It could not have been, therefore, that he paid his own money for the land deeded to him by the administrator. It was clearly his wife's money which paid for that land, and the equitable title resulted to her, since the consideration given was her choses in action from which the vendor realized the price agreed upon.

These circumstances in connection with the testimony of the husband that he never bought any land from his father, and never paid anything for the land conveyed, and never knew that the deed had been made to him until it was discovered, after the death of his father and after his indebtedness to the plaintiff had arisen, afford cogent and satisfactory proof justifying the finding of the lower court that Mary A. Nichols was entitled to a resulting trust in the land.

II. We do not think Mary A. Nichols is precluded from asserting her title to this land either by laches or estoppel. The record shows that she had no knowledge whatever that the deed was in the name of her husband as grantee until about two years after the death of the grantor and after plaintiff's claim had originated; that she promptly asserted her title by public outcry when the sheriff undertook to sell the land under plaintiff's judgment; that she set up her title in this case as soon as she was made a party to the litigation, and asked affirmative relief.

There is no evidence in the record that she was ever advised that her husband was one of the signers

of the note evidencing plaintiff's claim, nor was there any proof that she unreasonably delayed the assertion of her title after she learned the deed was made out to her husband, which information came to her after plaintiff's claim had arisen. If her husband was only surety on the note, it is less likely she would have known of that than if he had been principal, for in the latter case she probably would have been aware of the use made by him of the money.

She and her husband lived upon the farm; its cultivation was largely his work and that of her children, and naturally she would have no occasion to inquire about the payment of taxes by him or whether it was assessed in her name or in his name. According to the evidence of the members of the family, as they grew up they recognized the farm as belonging to her.

We see nothing in this record giving rise to any preclusion of Mary A. Nichols on the grounds of estoppel or laches. The facts of this case do not show that she misled plaintiff or induced it to do any act, or that she intentionally concealed from it her right and title to the property in question. [Alkire Grocer Co. v. Ballenger, 137 Mo. 370; DeBerry v. Wheeler, 128 Mo. 84; Scrutchfield v. Sauter, 119 Mo. 615; Blodgett v. Perry, 97 Mo. l. c. 273.]

Our conclusion is that the finding of the trial court sitting as a chancellor was in accord with the preponderance of the competent evidence. It is affirmed.

*Roy, C.,* concurs.

PER CURIAM:—The foregoing report of the commissioners is hereby adopted as the opinion of the court.