## MARGARET L. WILLIAMS v. MARGARET L. KEEF et al., Appellants.

### Division Two, March 21, 1912.

1. **RESULTING TRUST: Proceeds of Wife's Land: Presumption.** As the law stood in 1867 the husband had a right to reduce to his possession, and to become the absolute owner of, the proceeds of a sale of his wife's real estate not held by her as a separate estate; and if he used the money arising from a sale of her land to purchase other land and took the title in his own name, it will be assumed that he intended to reduce the money to his possession and did so with her consent, in the absence of a showing of any agreement between them that he took the property as her agent or trustee.

2. ————: **Long-Settled Titles.** It is not the policy of the law to allow long-settled titles to be easily disturbed. The evidence should be strong enough to remove all doubt that the husband, who used the proceeds of the sale of his wife's land to buy other land and took the title in his own name, in whom it was permitted to remain for thirteen years prior to his death

and twenty-seven years thereafter, did not intend to reduce said proceeds to his own use, but in taking the title in his own name was acting as her agent or trustee.

3. ————: Evidence: Proximity of Sale and Reinvestment. The fact that the husband and wife sold her land, and two days later he bought another tract and took the title in his own name, does not afford a basis for an inference strong enough to overcome the presumption that he intended to convert the money to his own use and that she assented thereto.

4. ————: Old Recollections. Recollections of casual remarks made by a deceased grantee as to the actual owner of the land, made from twenty-eight to forty years prior to the trial, are extremely unreliable as tending to establish a resulting trust in the grantee's wife.

5. PLEADING: Insufficient: Objection First on Appeal. It would be unfair to treat as fatal an objection, made for the first time in the appellate court, to the form of an answer, which objection could have easily been met by an amendment in the trial court.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED.

*John S. Crawford* and *Jones & Conkling* for appellants.

(1) The evidence is not sufficient to support the judgment. Evidence to establish a resulting trust must be so clear, strong and convincing as to leave no reasonable doubt in the mind of the chancellor as to the existence of the trust. The evidence does not measure up to that standard. Burdett v. May, 100 Mo. 13; Smith v. Smith, 201 Mo. 547; King v. Isley, 116 Mo. 155; Garrett v. Garrett, 171 Mo. 155; Modrell v. Riddle, 82 Mo. 31; Philpott v. Penn, 91 Mo. 38; Kennedy v. Kennedy, 57 Mo. 73; Ringo v. Richardson, 53 Mo. 386; Rogers v. Rogers, 87 Mo. 257; Bradley v. Bradley, 119 Mo. 61; McFarland v. Laforce, 119 Mo. 585; Curd v. Brown, 148 Mo. 82; Viers v. Viers, 175 Mo. 444; Reed v. Sperry, 193 Mo. 167; Johnson v. Quarrels, 46 Mo. 423; Woodford v. Stevens, 51 Mo. 443. (2) Under the

law, as it existed in 1867 when respondent's forty acres of land was sold to Allison, it not being her separate estate, if her husband, John F. Winkler, took the proceeds into his possession and under his control, it became his absolute property, and if he invested such proceeds in the land in controversy and took the deed in his own name, it became his absolutely. Smith v. Smith, 201 Mo. 549; Bank v. Fry, 168 Mo. 508; Tillman v. Tillman, 50 Mo. 40; Woodford v. Stevens, 51 Mo. 443; Kidwell v. Kirkpatrick, 70 Mo. 214; Leete v. Bank, 141 Mo. 574; Modrell v. Riddle, 82 Mo. 36; Sloan v. Torry, 78 Mo. 626; Dillenberger v. Wrisberg, 10 Mo. App. 465.

*Lozier, Morris & Atwood* for respondent.

(1) There is abundant evidence to support the finding and decree of the chancellor. Hammons v. Renfrow, 84 Mo. 341; Clark v. Clark, 86 Mo. 122; Botts v. Gooch, 97 Mo. 90; McCoy v. Hyatt, 80 Mo. 134; Woodford v. Stephens, 51 Mo. 447; Robert v. Walker, 101 Mo. 601; Holthaus v. Hornbostle, 60 Mo. 439; Bank v. Fry, 168 Mo. 492; McMunnigal v. Aylor, 204 Mo. 28; Admr. v. Walker, 25 Mo. 375; Kidwell v. Kirkpatrick, 70 Mo. 216; Pensenneau v. Pensenneau, 22 Mo. 27; Alkire Co. v. Ballenger, 137 Mo. 369; Freeland v. Williams, 220 Mo. 217; Depas v. Mayo, 11 Mo. 319; Bank v. Nichols, 235 Mo. 401. (2) The amended separate answer of Margaret Lee Keef does not controvert the allegations in respondent's bill, and they are, therefore as to her, taken as confessed, under the statute. Secs. 604 and 628, R. S. 1899; Dazell v. F. & C. Co., 176 Mo. 279; Bales v. Bennington, 136 Mo. 528; State v. Club, 200 Mo. 65.

FERRISS, P. J.—Appeal from a judgment of the circuit court of Carroll county, declaring a resulting trust in favor of plaintiff in forty acres of land. Here are the facts:

In April, 1866, there was conveyed to plaintiff, who was then the wife of John F. Winkler, by general warranty deed, a certain forty acres in section 33, township 52, in Carroll county. On August 24, 1867, the plaintiff joined her said husband in a warranty deed conveying this forty acres to one Allison for a recited consideration of $1000. On August 26, 1867, said John F. Winkler purchased from one Thompson forty acres in section 6, township 51, and eight acres additional in said township in Carroll county, and received a warranty deed therefor in his own name, of date August 26, 1867, reciting a consideration of $960. Plaintiff and her said husband took possession of the forty acres purchased from Thompson, and resided thereon together until his death, which occurred in February, 1880, and plaintiff continued in possession thereof up to the time of the filing of this suit in 1907. The eight-acre tract was sold by the Winklers in 1871, both joining in the deed.

John F. Winkler, by his last will, devised all his real estate, consisting of several tracts at his death, including the forty acres purchased from Thompson, aggregating more than two hundred acres, to his wife, this plaintiff, for life, with remainder to his adopted daughter, Mary Winkler; and all his personal property to his wife, absolutely. Upon his death in 1880, the plaintiff administered upon his estate. She inventoried this forty acres bought from Thompson as a part of her husband's estate. Upon final settlement, she was ordered to distribute as directed in the last will. Plaintiff subsequently intermarried with one Asa Williams, who died before 1907. In August, 1907, plaintiff filed this suit against the defendant, Margaret L. Keef, who is the child and only heir of the aforesaid Mary Winkler, now deceased.

In her petition plaintiff alleges that the purchase price, $1000, paid by Allison for the forty acres pur-

chased by him, the title to which was in her name, was paid to her said husband, John F. Winkler, as her agent and trustee; that she purchased the forty-eight acres aforesaid from Thompson for the price of $960; that this sum was paid to Thompson by her said husband, as her agent and trustee, out of the funds received by him from the sale of her forty acres to Allison aforesaid; that said forty-eight acres was deeded by the grantors to her said husband without her knowledge or consent, and that she did not know that the deed had been made to him until long after his death; that the title was in his name on the records at his death. She sets out his last will, and the fact of the death of the adopted daughter, and that defendant is the only heir of such daughter. She says that she is the absolute owner of said forty acres so conveyed to her husband, and prays the court to divest the title out of defendant and vest same in plaintiff. This prayer is on the theory that the defendant holds the legal title by descent subject to a life estate in plaintiff.

The answer contains a general denial, alleges ownership in John F. Winkler of the forty acres in controversy, and pleads the Statute of Limitations.

To sustain her case plaintiff introduced evidence of statements made by John F. Winkler concerning this land. She called four witnesses who testified as to their recollection of certain verbal statements made by John F. Winkler at the time of the purchase in 1867, and also subsequent statements made prior to his death in 1880. Some of the alleged statements were made forty years prior to the trial, in 1907, and others twenty-eight years before. Winkler died, as stated, in 1880. James Williams testified that in 1867, when the witness was fifteen years old, he heard a conversation between Winkler and the father of witness, in which Winkler said that he would buy the Thompson land for a home for his wife; that Winkler asked the father of witness whether he thought the Thompson forty acres

worth as much as his wife's forty, and said that he did
not want to cheat his wife.

Wm. Winkler testified that when he was twenty.
years old he was working for John F. Winkler after the
purchase, in 1867, of the forty acres in controversy, and
that John F. Winkler said to him: "I sold the forty
that belonged to my wife and took the money and
bought this forty, and I think I made a good deal. I
think this forty better than that."

Wm. Marcum, who also worked for John F. Wink-
ler, testified that he heard him say that he bought this
forty with his wife's money, and that Winkler once
said to witness: "Plow on her forty this evening."
When asked what land he referred to, witness said, "A
piece of land I suppose she bought afterwards, after
he bought this forty." The witness further said he
"understood" that Winkler referred to his wife's
forty. Witness said that this talk was about a year
before Winkler died, which would make the conversa-
tion twenty-eight years old. He then said that Wink-
ler died about ten years ago—not more than fifteen.
In fact, he had been dead twenty-seven years.

Mrs. Mattie Wilson testified that John F. Winkler
always called this land Margaret's forty; that he said
it was her forty, and also that he bought it with her
money. This witness also said that the conversations
were some eight or ten years before the trial.

There was also some testimony to the effect that
John F. Winkler had no property of his own of sub-
stantial value in 1867. The witnesses testified to sun-
dry conclusions of theirs as to where Winkler got the
money and as to who owned the land. But the fore-
going is substantially all the testimony competent and
material as to declarations by the husband, John F.
Winkler.

Plaintiff introduced the various deeds above re-
ferred to, also the last will of John F. Winkler.

Defendant introduced the letters of administration granted to plaintiff on the estate of John F. Winkler, together with the inventory and appraisement filed by her, and also her settlements in the probate court.

I. It will be perceived that there is no direct evidence that the $1000 derived from the sale of plaintiff's forty acres was paid to her husband, nor that he paid for the forty in controversy out of such money, although it is a fair inference that such were the facts. There is no proof at all of any contract, agreement or understanding between Winkler and his wife that he should collect and expend this money as her agent. The deed to her land was dated August 24, 1867. The deed to Winkler for the forty in question was dated August 26, 1867. Upon the inference to be drawn from these dates, in close proximity, and upon the verbal testimony of Winkler's declarations, plaintiff's case rests. It may be further noted that there is no evidence as to the source from which was derived the money paid for the forty acres conveyed to plaintiff in April, 1866. It does not appear that plaintiff had at that time any money from inheritance or otherwise. She held the title to that forty from April, 1866, to August, 1867.

This transaction occurred in 1867. As the law then stood the husband had a right to reduce to his possession, and to become the absolute owner of, the proceeds of a sale of his wife's real estate not held by her as a separate estate. If he used the proceeds of her land, it will be assumed that he intended to exercise such right where, as here, he buys other property in his own name, there being no agreement between him and his wife that he takes such property as her agent or trustee. [Modrell v. Riddle, 82 Mo. 31; Smith v. Smith, 201 Mo. 533; Tillman v. Tillman, 50 Mo. 41.] And it will further be presumed to be with her consent.

[National Bank v. Fry, 168 Mo. 508; Tillman v. Tillman, supra.].

The case of Bank v. Nichols, 235 Mo. 401, cited on this point, does not qualify the foregoing proposition. In that case the property of the wife was never reduced to the possession of the husband. He did no more than to join his wife in a receipt for her share of her father's personal estate, which share was never in fact paid to either her husband or herself; but there was conveyed to him some land which she had agreed to accept in exchange for her interest in her father's personalty, and for which exchange she and her husband executed the receipt aforesaid. Furthermore, the husband testified that he never received the deed, and did not consider that he had any substantial ownership in the land.

We do not regard the proximity of the dates of the sale of the land to which plaintiff held title and of the purchase of the forty in her husband's name as affording a basis for an inference strong enough to overcome the presumption that he intended to convert the money to his own use, and that the wife assented thereto.

We regard recollections of casual remarks from twenty-eight to forty years ago as extremely unreliable. It is perhaps possible for a boy fifteen years old to remember for forty years a casual remark made in his hearing concerning a financial transaction in which he has no interest, but it is not evidence substantial enough to disturb titles to land which have been unassailed during all that time. Testimony as to vague and doubtful statements made in casual conversations by the husband as to the ownership by his wife of the property standing in his name is not, in itself, enough to establish a resulting trust.

It is not the policy of the law to allow long-settled titles to be easily disturbed. The evidence should be strong enough to remove all doubt. Furthermore

even were we to give full force to all that is testified by the witnesses, we would doubt its sufficiency. The statements imputed to Winkler do not necessarily recognize ownership in the wife. They certainly do not point to any express agreement with her that he should hold the title for her as her agent or trustee. The record is barren of anything tending to show any such arrangement, or that the wife ever claimed that such relation existed. The views herein expressed are in line with the decisions of this court. [Curd v. Brown, 148 Mo. 83; Philpot v. Penn, 91 Mo. 38; King v. Isley, 116 Mo. 155.] In the last cited case the following rule is cited from a former decision, and affirmed:

"The rule in this court is settled by a uniform line of decisions that parol testimony, in order to accomplish such an object and secure such an end, must be clear, strong and unequivocal; so definite and positive as to leave no room for doubt in the mind of the chancellor as to the existence of such a trust."

Plaintiff cites Hammons v. Renfrow, 84 Mo. 341, as being "almost identical with the case at bar." We think counsel misapprehend that case. The court there asserts the proposition that by the law in force in 1867 the proceeds of the sale of the wife's land became *eo instanti* the absolute property of the husband when they came into his possession, unless by *clear* and *unequivocal* acts of the husband the proceeds which so came to him were so held and managed by him as to exclude same from his common law marital rights. Upon the facts in that case, which radically differ from the facts here, the court finds that the husband held the proceeds as trustee for his wife. Other cases cited by plaintiff (Clark v. Clark, 86 Mo. l. c. 122; McCoy v. Hyatt, 80 Mo. 130; Bank v. Fry, 168 Mo. 492; Rice v. Shipley, 159 Mo. 399) are disposed of upon the facts in each case, but in recognition of the principles of law which we have stated above. The question, then, be-

comes one of fact, and we think the facts in this case fail to establish the claim of plaintiff.

If it was understood and agreed at the time that Winkler should act simply as the agent of his wife in these transactions, it is strange that she should wait twenty-seven years after the time when she must have known that he had taken the title, before asserting a claim. She knew when she filed the inventory, in 1880, that the title was in her husband's name. Why she should let twenty-seven years go by, increasing with time the difficulty of proof it is hard to understand, unless indeed some change in the family relations stimulated this belated claim into activity. We think the case fails for want of proof.

II. The plaintiff claims that the answer of defendant Keef does not sufficiently present the issue discussed above. No objection was made to the sufficiency of the answer before or during the trial. It is now objected that the general denial therein was not in proper form. This objection comes too late. It would be unfair to treat as fatal an objection, made for the first time in this court, to the form of pleading, which objection could have been easily met by an amendment in the trial court.

III. What we have said disposes finally of this case, and it therefore becomes unnecessary to discuss other points presented by appellants. The judgment is reversed and the bill dismissed at plaintiff's cost. *Kennish* and *Brown, JJ.,* concur.